

*U.S. Department of Justice*

*United States Attorneys
Eastern District of New York
Northern District of Georgia*

January 18, 2019

Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. UBS Securities LLC, et al.*, No. 18-CV-6369 (MKB/PK)

Dear Judge Brodie:

The United States respectfully submits this letter in response to Defendants UBS Securities LLC, UBS AG, Mortgage Asset Securitization Transactions, Inc., and UBS Real Estate Securities, Inc.'s (together, "UBS") January 11, 2019 letter (ECF No. 23) seeking leave to file a motion to dismiss this action.

The United States' Complaint (ECF No. 1) alleges that UBS violated the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA"), by knowingly making false statements to investors in connection with the issuance of 40 residential mortgaged-backed securities ("RMBS") between 2006 and 2007 (the "Subject Deals"). The Complaint seeks the imposition of civil penalties for violations of the predicate offenses of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), 1005 (fraudulent benefit from a transaction with a financial institution), and 1014 (making false statements to influence actions of certain financial institutions). The United States ultimately must prove its case by a preponderance of the evidence. *See* 12 U.S.C. § 1833a(f).

As detailed in the Complaint, UBS knew that significant numbers of the loans backing the 40 Subject Deals did not comply with loan underwriting guidelines that were designed to assess borrower ability to repay. UBS also was aware that a significant number of the loans were not originated in accordance with applicable law. UBS knew of these facts because it had conducted "due diligence" reviews of the loans before it marketed, securitized and sold the loans in RMBS to a broad array of investors, including federally-insured financial institutions. Although UBS knew of these facts, it did not disclose them to investors. Instead, UBS knowingly made false statements in offering documents about the true characteristics of the loans—information that was critical to informed decision-making by investors. *See, e.g.,* Compl. ¶¶ 115-19. In all, UBS' fraud permeated the 40 Subject Deals and resulted in many billions of dollars of investor losses. The United States seeks a penalty commensurate with this conduct.[1]

---

[1] FIRREA authorizes the Court, in its discretion, to impose a civil penalty up to the amount of the "gain" or "loss" experienced by any "person" in connection with a violation of the statute's predicate offenses. 12 U.S.C. § 1833a(b)(3)(A); *see also United States v. Countrywide*, 33 F. Supp. 3d 494, 501

***Evidence of UBS' Fraudulent Conduct Is Overwhelming***: The evidence of UBS' liability under FIRREA is overwhelming and meticulously detailed in the Complaint, which comprises 302 pages, including nearly 100 pages of tables concerning the Subject Deals. This includes citations to specific, loan-level information that contradicts key representations UBS made to investors. The Complaint also cites communications evidencing UBS' knowledge that key representations for each Subject Deal were false,[2] identifies the UBS RMBS team that securitized the Subject Deals, and details how the UBS employees across this team shared information within UBS and reviewed offering documents while knowing that the representations made therein were materially false. *See, e.g.,* Compl. ¶¶ 5, 23, 24, 75, 111-14, 137, 144, 158, 167, 171, 175, and 180.

***UBS' Arguments Are for Trial, Not the Pleadings Stage***: UBS essentially asks the Court to disregard the presumed truth of the United States' well-pleaded allegations and instead adopt UBS' own narrative, which purportedly absolves UBS from any wrongdoing and, indeed, portrays UBS as a victim. For example, UBS claims that it lost money during the financial crisis in connection with unspecified "mortgage-related investments." ECF No. 23 at 2. From this, UBS concludes that, as a matter of law, it could not have acted with requisite intent to defraud when it made materially false statements to its RMBS investors. *Id.* This alternative narrative has no place in a motion to dismiss in which the United States' allegations are to be accepted as true. That said, the narrative is absurd on its face. The fact that a defendant who has allegedly committed fraud may have lost money does not mean that it did not act with the requisite fraudulent intent when engaging in transactions with others. Moreover, UBS cannot say that it actually intended to share the risk of the Subject Deals at issue in this case with investors. As alleged in the Complaint, it is indisputable that, with respect to the Subject Deals, UBS' "business model" was to offload all risk onto others. *See* Compl. ¶¶ 28, 110.

***The United States Is Not Required to Allege That UBS Intended Others to Lose Money***: UBS also argues that it could not have acted with requisite fraudulent intent because it did not sell the Subject Deals "knowing those loans would default." *See* ECF No. 23 at 2. In other words, UBS erroneously claims that, to survive dismissal, the Complaint must allege that UBS intended for others to lose money. *Id.* This is not what is required under FIRREA or any of its predicate statutes. The United States is not required to allege that UBS intended for the Subject Deals, or for investors in those deals, to lose money. Instead, the United States must only allege, as it has here, that UBS knowingly withheld from investors the facts necessary for them to make informed economic decisions about their investments. *See, e.g., United States v. Binday*, 804 F.3d 558, 579

---

(S.D.N.Y. 2014) (Rakoff, J.), *rev'd on other grounds*, 822 F.3d 650 (2d Cir. 2016) (analyzing FIRREA penalty provisions).

[2] This includes, for example, communications showing that UBS' own lawyers warned it that disclosures in one deal were false before closing; an acknowledgement by a UBS trader that certain loans in the Subject Deals were "quite possibly better than little beside leprosy spores;" and a complaint by a UBS employee to the head of UBS's RMBS business that he was "really concerned [about the] 'lack of right and wrong — aka ethics' — ie. [sic] Lying is ok." Compl. ¶¶ 5, 29.

(2d Cir. 2015); *United States v. Carlo*, 507 F.3d 799, 802 (2d Cir. 2007). Whether UBS was "blindsided" by the financial crisis of 2008 is simply not relevant to this case.[3]

***Rule 9(b)***: UBS' challenge to the sufficiency of the pleading with respect to its fraudulent intent is meritless. The Complaint is a highly-detailed pleading with allegations that more than satisfy particularity requirements. *See* Fed. R. Civ. P. 9(b) ("requires a plaintiff to "state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

***Claims Under Predicate Violations of 18 U.S.C. §§ 1334, 1005, and 1014***: UBS argues that the United States' claims concerning these predicate offenses should be dismissed because the United States "cannot predicate" a claim on these statutes. ECF No. 23 at 3. But the plain text and case law interpreting each of these statutes support the application of these statutes here. There is no basis to conclude otherwise.

***Claims Against UBS AG***: UBS argues that there is no jurisdiction or claim against UBS AG, *see* ECF No. 23 at 3, despite the fact that UBS AG was *an originator of loans* securitized in Subject Deals through its trade name, "UBS Home Finance." Among other activities sufficient for jurisdictional and pleading purposes, UBS AG conducted "quality control" reviews of these loans and concluded that significant numbers of the loans were defective. UBS AG nevertheless proceeded to securitize these loans through its affiliates. *See* Compl. ¶¶ 35, 56, 189-197.

The United States thanks the Court for its attention in this matter.

Respectfully submitted,

| | |
|---|---|
| RICHARD P. DONOGHUE<br>UNITED STATES ATTORNEY<br>EASTERN DISTRICT OF NEW YORK | BYUNG J. PAK<br>UNITED STATES ATTORNEY<br>NORTHERN DISTRICT OF GEORGIA |
| BY:  /s/ | BY:  /s/ |
| BONNI J. PERLIN<br>MICHAEL J. CASTIGLIONE<br>RICHARD K. HAYES<br>ASSISTANT UNITED STATES ATTORNEYS<br>271A CADMAN PLAZA EAST<br>BROOKLYN, NY 11201-1820<br>(718) 254-7000 | ARMEN ADZHEMYAN<br>AUSTIN M. HALL<br>ASSISTANT UNITED STATES ATTORNEYS<br>RICHARD B. RUSSELL FEDERAL BUILDING<br>75 TED TURNER DR. SW, SUITE 600<br>ATLANTA, GA 30303-3309<br>(404) 581-6000 |

cc:  All counsel of record (via ECF)

---

[3] UBS wrongly claims that *In re UBS AG Sec. Litigation*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), involved the "very same scienter theory." *See* ECF No. 23 at 2. That case had nothing do with UBS' representations made to investors in the sale of RMBS, much less the sale of the Subject Deals, and the false statements made in connection with those sales.