SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 22, 2019

Via ECF

The Honorable Peggy Kuo,
   United States Magistrate Judge,
      United States District Court, Eastern District of New York,
         225 Cadman Plaza East,
           Brooklyn, New York 11201.

      Re:    *United States* v. *UBS Securities LLC*, No. 18-cv-6369 (E.D.N.Y.)

Dear Magistrate Judge Kuo:

      On behalf of Defendants (collectively, "UBS"), we raise a significant discovery dispute arising from Plaintiff's refusal to preserve and produce documents that are indisputably relevant and responsive to UBS's Rule 34 Requests. (*See* Exs. 1, 2.) Specifically, Plaintiff, the United States, maintains that it need not preserve and produce documents in the possession, custody, or control of the Department of Housing and Urban Development ("HUD") and the Department of the Treasury ("Treasury").

      Review of publicly-available information shows that HUD and Treasury possess documents highly relevant to matters that Plaintiff has directly put at issue in its Complaint, including: (i) "origination practices and standards" of mortgage lenders (Compl. ¶¶ 4, 44-49); (ii) the reasons for a "deterioration of loan underwriting standards" leading up to 2007 (*id*. ¶¶ 50-55); (iii) losses incurred by investors in residential mortgage-backed securities ("RMBS") and the causes of those losses (*id*. ¶¶ 2-3, 800, 811, 818, 823, 828); and (iv) whether UBS's conduct "contribut[ed] to a housing bubble that, when it burst, led to one of the most severe financial crises in this nation's history" (*id*. ¶ 293). Discovery from HUD and Treasury is critical here, where the United States is Plaintiff, because their statements will be admissible under Federal Rule of Evidence 801(d)(2) as statements of the opposing party (formerly "admissions by a party opponent"), including statements made by the United States, contemporaneously with the events at issue, contradicting assertions the United States is now making in litigation.

      During extensive meet-and-confer discussions, UBS provided Plaintiff lengthy submissions (a) outlining legal authority showing that HUD and Treasury are subject to party discovery where, as here, the plaintiff is the United States and (b) providing numerous examples of publicly-available documents showing that HUD and Treasury unquestionably have (or once had) documents that are highly relevant and responsive to UBS's outstanding Rule 34 Requests. (*See* Exs. 3, 5.) Although Plaintiff agrees that HUD and Treasury are part of Plaintiff (*see* Ex. 4), Plaintiff has refused to produce documents from HUD or Treasury and, troublingly, has not taken steps to preserve relevant documents at HUD or Treasury (*see* Ex. 6). Accordingly, UBS requests

that the Court direct Plaintiff to preserve and produce HUD and Treasury documents that are responsive to UBS's Rule 34 Requests.

### I.     Plaintiff Has Conceded That HUD and Treasury Are Subject to Party Discovery.

UBS's Rule 34 Requests include specific requests for documents concerning: (i) the allegations of the Complaint; (ii) the U.S. Government's programs to relax mortgage underwriting guidelines and increase home ownership; and (iii) the causes of the financial crisis. (Ex. 1, Req. Nos. 1, 2, 3, 5, 15.) Plaintiff initially asserted that only DOJ, but not other Executive Branch departments, must preserve and produce documents. (*See* Ex. 3 at 3.) But *United States* v. *AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978), the leading case on this issue, held that the United States as plaintiff must also produce documents from other non-independent Executive Branch departments like HUD and Treasury. (*Id.* at 1, 3-4.) Plaintiff thereafter agreed that it would not dispute that HUD and Treasury are properly subject to UBS's Rule 34 Requests. (Ex. 4 at 1.)

Even more significantly, UBS provided examples of HUD and Treasury documents that Plaintiff must preserve and produce (*see* Ex. 3 at 4-7) and, in response to a request from Plaintiff for more examples, UBS provided additional details of many more relevant HUD and Treasury documents referenced in the public record. (*See* Ex. 5 at 3-10.)[1] Nevertheless, on May 13, Plaintiff stated that it still had not preserved relevant documents at HUD or Treasury and would not produce HUD or Treasury documents responsive to UBS's requests. (*See* Ex. 6.)

### II.    Relevant Documents at HUD and Treasury Must Be Preserved and Produced.

Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and Rule 34 "requires a party to produce all responsive documents within the scope of Rule 26 within its 'possession, custody, or control,'" *Norton* v. *Town of Islip*, 2018 WL 5017744, at *5 (E.D.N.Y. Oct. 16, 2018). UBS cannot know the full scope of relevant documents Plaintiff has, but UBS has found many specific examples of categories of relevant HUD and Treasury documents in the public record. Plaintiff has never contended that these documents, which include the following, are not responsive to UBS's requests:

*1. Documents Concerning HUD's Audits of Mortgage Lenders, Including Lenders Whose Loans Backed the RMBS at Issue Here.*  During 2005-2007, HUD audited mortgage lenders whose loans backed the 40 RMBS. For example, on May 10, 2007, HUD's Office of the Inspector General ("OIG") issued an audit report on Countrywide Home Loans, Inc., which originated loans underlying 13 of the 40 RMBS at issue here (the "40 RMBS"). (Ex. 3 at 4-5.) The report found that 100% of the sample of loans reviewed by HUD OIG had "numerous procedural, compliance, and documentation deficiencies," and that 10% had "significant issues that present a material risk of loss to FHA." Nevertheless, HUD OIG concluded that the Countrywide "branch *generally complied* with HUD regulations, procedures, and instructions in the origination of FHA-insured single-family mortgages." (*Id.* at 4 (emphasis added).) Documents

---

[1] To reduce volume, UBS has not attached hereto the HUD and Treasury documents that were attached as exhibits to its letters (Exs. 3-6). UBS will provide these documents if the Court requests, but the letters themselves provide detailed summaries of the exhibits, and Plaintiff has never contended during the conferrals that UBS's letters mischaracterize or misconstrue those exhibits. Plaintiff also has never responded in writing to any of UBS's letters.

Hon. Peggy Kuo -3-

about such audits clearly are relevant to Plaintiff's claims that UBS was "aware from the due diligence that it conducted" on samples of loans that loans backing the 40 RMBS purportedly "did not comply with underwriting guidelines" (Compl. ¶¶ 8, 12), and that statements in the prospectus supplements that loans backing the 40 RMBS "had been underwritten *generally in accordance* with [the] underwriting guidelines" of the loan originators were knowingly false (*id.* ¶ 7 (emphasis added)).

*2. Documents Concerning HUD's Participation in the Housing Market.* Plaintiff has put at issue whether and to what extent UBS contributed to a "housing bubble that, when it burst, led to one of the most severe financial crises in this nation's history." (Compl. ¶ 293.) UBS is thus entitled to documents in HUD's possession supporting other explanations for the housing bubble and financial crisis, including the extent to which Plaintiff's own involvement in the loosening of underwriting standards contributed to the housing bubble that Plaintiff now seeks to blame on UBS. Since the early 1990s, HUD has been required "to establish an annual goal for the purchase by" Fannie Mae and Freddie Mac of "mortgages on housing for low- and moderate-income families." (Ex. 5 at 3). The purpose of these goals was to increase homeownership, primarily through the use of "flexible underwriting criteria" and "compensating factors in underwriting loans." (*Id.*) Documents concerning the effect of HUD's own policies on the housing bubble are directly relevant to Plaintiff's claims.

*3. HUD's and Treasury's Analyses of Mortgage Underwriting Standards.* HUD analyzed specific underwriting guidelines and practices that are directly relevant here. For example, HUD prepared reports comparing the underwriting guidelines of Fannie Mae, Freddie Mac, FHA, and GMAC-RFC—an originator of loans backing five of the 40 RMBS. (Ex. 3 at 5.) UBS believes that Treasury also analyzed underwriting standards to formulate mortgage industry regulations, including its October 2006 "Interagency Guidance on Nontraditional Mortgage Product Risks," which provided guidance for loans "with high loan-to-value (LTV) ratios, high debt-to-income (DTI) ratios, and low credit scores," and "stated income" loans and loans with "simultaneous second-lien[s]"—the very types of loans that Plaintiff criticizes here. (*Id.*) These analyses are directly relevant to Plaintiff's allegation that the loans backing the 40 RMBS were "much riskier and much more likely to default than UBS represented to investors." (Compl. ¶ 3.)

*4. Treasury's Analyses of the Causes of the Financial Crisis and RMBS.* Because Plaintiff seeks to blame the housing bubble and financial crisis on UBS, UBS is entitled to Treasury's analyses of the causes of the crisis. (*See*, *e.g.*, Ex. 3 at 5 (Treasury presentation noting that "crisis was caused by, among other things, an unsustainable housing boom").) Treasury also purchased RMBS—many likely backed by loans from originators whose loans backed the 40 RMBS—and presumably analyzed those RMBS and their performance. (Ex. 5 at 7-8 (describing Treasury plan to purchase "legacy" non-agency RMBS, "which generated losses for investors and banks" "due to the bursting of the housing bubble in 2007")).) Those contemporaneous analyses are relevant because Plaintiff blames UBS for causing investor losses. (*See* Compl. ¶ 3.)

\* \* \*

UBS respectfully requests that the Court order Plaintiff to preserve potentially relevant documents, and to search for and to produce documents responsive to UBS's Rule 34 Requests, from HUD and Treasury.

Hon. Peggy Kuo -4-

Respectfully,

*[signature]*

Robert J. Giuffra, Jr.

(Attachments)

cc: All counsel of record (via ECF)