SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

December 27, 2019

Via ECF

The Honorable Margo K. Brodie,
   United States District Judge,
      United States District Court, Eastern District of New York,
         225 Cadman Plaza East,
           Brooklyn, New York 11201.

        Re:    *United States* v. *UBS Securities LLC*, No. 18-cv-6369 (E.D.N.Y.)

Dear Judge Brodie:

      On behalf of Defendants UBS Securities LLC, UBS AG, Mortgage Asset Securitization Transactions, Inc., and UBS Real Estate Securities, Inc. (collectively, "Defendants"), we respectfully submit this letter in accordance with the Court's December 10, 2019 Order. (Mem. & Order, ECF No. 76 ("Order").)

      In its December 10 Order, the Court held that it has specific personal jurisdiction over UBS AG with respect to Plaintiff's claims based on two residential mortgage-backed securities ("RMBS") offerings backed by mortgages originated by UBS Home Finance, a trade name for UBS AG's Tampa Branch (the "Home Finance RMBS"). (Order at 43-44.) The Court then directed the parties to submit letter briefs addressing the sole question of whether the Court has specific personal jurisdiction over UBS AG with respect to Plaintiff's claims based on the other 38 RMBS at issue in the Complaint (the "non-Home Finance RMBS"). (*Id.* at 45 n.16.) The answer to that question is no.

      As the Court noted, Plaintiff asserted, "without any legal support," that UBS AG's involvement (or lack thereof) in the 38 non-Home Finance RMBS is "irrelevant" "because UBS AG is subject to personal jurisdiction for every cause of action based on the [two] Home Finance Deals." (*Id.* (citing Pl.'s Opp'n, ECF No. 60 ("Opp."), at 63 & n.49).) In other words, Plaintiff maintains that specific personal jurisdiction over UBS AG with respect to the two Home Finance RMBS necessarily also gives the Court specific personal jurisdiction over UBS AG with respect to the 38 non-Home Finance RMBS, merely because Plaintiff has asserted five "causes of action" that cover in blanket fashion the two Home Finance RMBS as well as the 38 non-Home Finance RMBS. (Opp. at 63.) That is incorrect as a matter of law.

      The Court already correctly rejected Plaintiff's argument that UBS AG is subject to specific personal jurisdiction for the non-Home Finance RMBS based on UBS AG's alleged

roles (*e.g.*, swap provider and cap provider) in various side agreements concerning certain of the 40 RMBS offerings, because the Complaint does not define or explain those roles or connect UBS AG's alleged conduct in those roles in any way to alleged fraud. (Order at 45 n.16.) Likewise, the Court correctly rejected Plaintiff's argument that UBS AG's status as ultimate parent of the other three defendant entities is sufficient to establish specific personal jurisdiction, because the Complaint does not allege facts showing that any of the other entities were acting for UBS AG's benefit, with its knowledge and consent, and under its control.[1] (*Id.*)

As shown below, the Court lacks specific personal jurisdiction over UBS AG with respect to Plaintiff's claims based on the 38 non-Home Finance RMBS.

*First*, recent authority from the Second Circuit and this District supports the commonsense principle that the Court must assess specific personal jurisdiction here on an offering-by-offering basis—directly contradicting Plaintiff's theory that it need only establish personal jurisdiction for each "cause of action." *See Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 83-84 (2d Cir. 2018) (district court had specific personal jurisdiction over state law fraud claims based on allegedly fraudulent sales in forum state, but ***not*** over state law fraud claims based on allegedly fraudulent conduct in London); *Strauss* v. *Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 23 (E.D.N.Y. 2016) (Irizarry, J.) (rejecting plaintiffs' argument that injuries in connection with 19 terrorist attacks could be "aggregated into a single, unitary claim" for purposes of specific personal jurisdiction). Because Plaintiff alleges that UBS AG violated five FIRREA predicates in connection with "each" of the 40 separate RMBS offerings (*see, e.g.*, Compl. ¶¶ 793, 802, 804), the Court must conduct an independent specific personal jurisdiction analysis for each of the 40 offerings. (*See infra* Part A.)

*Second*, Plaintiff does not allege that UBS AG originated loans backing the 38 non-Home Finance RMBS or engaged in any activities in New York that give rise to the claims as to those 38 offerings. (*See* Order at 42-43.) As a result, there is no "relationship" or "nexus" between UBS AG's alleged activities in New York and "the claim[s] asserted" in connection with

---

[1]    The Court should reject any attempt by Plaintiff to use this supplemental briefing to add new allegations on these issues that were not pled in the Complaint. *See Olde Monmouth Stock Transfer Co.* v. *Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007) (plaintiff cannot amend complaint by asserting new factual allegations in motion papers). To the extent that Plaintiff raises new arguments that it could have—but did not—raise in its opposition to Defendants' motion to dismiss, the Court should reject those arguments as waived. *See Chevron Corp.* v. *Donziger*, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013) (party "waived" argument by "failing to develop it"). Similarly, Plaintiff is not entitled to jurisdictional discovery on these issues or to delay resolution until summary judgment because Plaintiff already has conducted four years of discovery regarding the 40 RMBS offerings. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 239 (S.D.N.Y. 2015) (denying jurisdictional discovery where plaintiff had received "massive discovery" and therefore was not "required to guess at bases for jurisdiction"). Plaintiff cannot proceed to summary judgment without first making a *prima facie* showing of specific personal jurisdiction over UBS AG, which it has not done. (*See* Order at 45 n.16.)

the non-Home Finance RMBS offerings. *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 169 (2d Cir. 2013). (*See infra* Part B.)

*Third*, Plaintiff cannot manufacture specific personal jurisdiction over UBS AG as to any of the 38 non-Home Finance RMBS offerings by characterizing the Complaint as alleging a single "overall scheme," or by lumping together 40 separate RMBS offerings into the five "causes of action." (Opp. at 62-63, 64.) By its terms, the Complaint alleges that each of the 40 separate RMBS offerings involves (i) distinct offering documents with different alleged misrepresentations to investors, (ii) unique allegedly "defective" loans backing each RMBS, and (iii) separate allegedly "poor due diligence results" that Plaintiff relies on virtually exclusively to assert that statements in the offering documents were false. (*See* Compl. ¶¶ 307-791.) Accordingly, Plaintiff asserts a claim based on each of the five FIRREA predicates *for each of the 40 RMBS*. (*See*, *e.g.*, Compl. ¶¶ 793-797, 804-808, 815-819, 822-824, 827-829 (allegations brought "[i]n connection with *each Subject Deal*" (emphasis added)).) There is no basis for Plaintiff's apparent contention that UBS AG may be held liable for "deal-specific" conduct with respect to offerings in which the Complaint alleges UBS AG **played no role**. (*See* Compl. ¶ 306; *infra* Part C.)

### A.     The Court Must Assess Specific Personal Jurisdiction Offering-by-Offering.

Plaintiff concedes, and the Court correctly held, that UBS AG is not subject to general jurisdiction in New York. (Order at 42 n.15.) Therefore, the only conceivable basis for personal jurisdiction here is specific jurisdiction—which, under CPLR § 302(a)(1), requires plaintiff to show that UBS AG "transacted business within the state" and "the claim asserted . . . arise[s] from that business activity." *Licci*, 732 F.3d at 168; Order at 43.[2] Moreover, Plaintiff "must establish the court's jurisdiction with respect to *each* claim asserted," *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004), meaning that the specific personal jurisdiction inquiry is "transaction-specific," *McCoy* v. *Interclaim Holdings Ltd.*, 2005 WL 8156768, at *5 (E.D.N.Y. Feb. 25, 2005) (Bloom, M.J.).

Under recent Second Circuit precedent, courts must assess specific personal jurisdiction on a transaction-by-transaction (or act-by-act) basis even when multiple transactions (or allegedly wrongful acts) underlie what a plaintiff has styled as a single "claim" or "cause of action." In *Charles Schwab*, plaintiff brought state law fraud claims arising out of defendants' direct sales of debt securities to plaintiff in California and defendants' allegedly false LIBOR submissions in London (which reduced defendants' interest payment obligations on the debt securities). 883 F.3d at 77-79. The Second Circuit held that the district court *had* specific personal jurisdiction over the state law fraud claims to the extent that they were based on defendants' direct

---

[2]     In addition to CPLR § 302(a)(1), Plaintiff also asserts jurisdiction under CPLR § 302(a)(2) and (3). (Opp. at 61-62.) Jurisdiction under those two subparagraphs similarly requires a nexus between the claim asserted and the defendant's in-forum business activities. *See*, *e.g.*, *Madison Stock Transfer, Inc.* v. *Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 480 (E.D.N.Y. 2019) (Bulsara, M.J.) (section 302(a)(3) requires "nexus between the cause of action and the defendant's conduct"); *Overseas Media, Inc.* v. *Skvortsov*, 407 F. Supp. 2d 563, 573 (S.D.N.Y. 2006) ("[T]he lack of any New York nexus here is fatal to the jurisdictional analysis under [s]ection 302(a)(2).").

sales in California, but *lacked* specific personal jurisdiction over those same claims to the extent that they were based on the allegedly false LIBOR submissions in London. *Id.* at 83 ("Defendants are right . . . that sales in California do not alone create personal jurisdiction for claims premised solely on Defendants' false LIBOR submissions in London."). Similarly, in this case, the Court must analyze UBS AG's alleged role in the two Home Finance RMBS offerings separately from UBS AG's alleged roles in the 38 non-Home Finance RMBS offerings—which, as the Court held, the Complaint fails to connect to alleged fraud in connection with the 38 non-Home Finance RMBS (*see* Order at 45 n.16)—regardless of whether all 40 offerings underlie each of the five "causes of action."

A recent decision in this District follows the same principle established in *Charles Schwab*. In *Strauss*, plaintiffs sued a bank under the Antiterrorism Act of 1992 ("ATA") for allegedly supporting Hamas by wiring funds to organizations affiliated with Hamas. 175 F. Supp. 3d at 9-11. Plaintiffs' claims arose out of 19 separate terrorist attacks orchestrated by Hamas that injured or killed plaintiffs or their family members. *Id.* Even though plaintiffs asserted a single claim under the ATA, the court refused to treat it as "a single, unitary claim . . . for purposes of establishing specific jurisdiction" because plaintiffs "allege[d] injuries in connection with 19 different attacks" and could have "pursued their claims in 19 separate actions, each premised upon a single attack." *Id.* at 23. The same principle applies here. Plaintiff could have "pursued [its] claims in [40] separate actions" or pled separate "causes of action" for each of the 40 RMBS offerings. *Id.* The fact that Plaintiff chose to lump together the two Home Finance RMBS offerings and the 38 non-Home Finance RMBS offerings into the same "causes of action" does not mean that specific personal jurisdiction exists over UBS AG for *all* of the offerings simply because the Court has found that it exists for *two* of them.

The Supreme Court's decision in *Bristol-Myers Squibb* v. *Superior Court of California* also reinforces the need to assess specific personal jurisdiction on a transaction-by-transaction (or act-by-act) basis. 137 S. Ct. 1773, 1781 (2017). There, plaintiffs from California and 33 other states sued Bristol-Myers Squibb in California state court, asserting claims arising from their ingestion of a pharmaceutical drug. *Id.* at 1778. The Supreme Court held that the California courts lacked specific personal jurisdiction over the non-California plaintiffs' claims because those plaintiffs did not purchase or ingest the drug in California and were not injured by or prescribed the drug in California. *Id.* at 1781. It made no difference that the non-California plaintiffs alleged the "same injuries" as, and asserted "claims similar to those brought by," the California plaintiffs: the Court held that "[w]hat is needed—and what is missing here—is a connection between the forum and the *specific* claims at issue." *Id.* (emphasis added). The same is true here with respect to each of the 38 non-Home Finance RMBS offerings, as discussed below.

 **B.** **The Complaint Does Not Allege Any Nexus Between UBS AG's Activities in New York and the Purported Fraud in Connection With the 38 Non-Home Finance RMBS Offerings.**

This Court lacks specific personal jurisdiction over UBS AG with respect to the non-Home Finance RMBS offerings because there is no nexus between any UBS AG business activities in New York and alleged fraud in connection with those 38 offerings. (*See* Order at 44.) Although the Court held that "UBS AG is subject to personal jurisdiction in New York based on its origination of loans under the trade name Home Finance that were securitized in two of the

subject deals," Plaintiff's claims based on the 38 non-Home Finance RMBS do not in any way arise from that business activity. (Order at 43.) *See Licci*, 732 F.3d at 168 (requiring "a relatedness between the transaction and the legal claim" (internal quotation marks omitted)). This is fatal to Plaintiff's jurisdictional arguments because "a defendant's general connections with the forum are not enough" to support specific personal jurisdiction over claims that did not arise from those connections. *Bristol-Myers Squibb*, 137 S. Ct. at 1781. That is true even where the defendant is subject to specific jurisdiction with respect to identical claims arising from in-forum conduct. *Id.*

Here, the argument for specific personal jurisdiction is even weaker than in *Bristol-Myers Squibb*. Unlike in that case, where the defendant allegedly caused harm outside of the forum that was identical to the harm caused within the forum, Plaintiff here does not allege that UBS AG "had anything to do with the alleged fraud" relating to any of the 38 non-Home Finance RMBS offerings. (Order at 45 n.16.) *See SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (where defendant's conduct is neither the proximate nor "but for" cause of plaintiff's injuries, "the connections between the . . . [d]efendants, . . . [the] claims, and . . . [the] forum are too tenuous to support" specific personal jurisdiction). UBS AG's origination of loans through UBS Home Finance was not related to Plaintiff's claims asserted as to the 38 non-Home Finance RMBS offerings, and Plaintiff does not allege that *UBS AG* made any misrepresentations in connection with those offerings. In short, Plaintiff has not pled an "adequate link" between its claims arising from the 38 non-Home Finance RMBS offerings and UBS AG's forum-related business activity to subject UBS AG to specific personal jurisdiction with respect to those claims. *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

      **C.**      **Plaintiff Cannot Manufacture Specific Personal Jurisdiction by Alleging a Unitary "Scheme" To Defraud or Pointing to "Causes of Action."**

Plaintiff cannot avoid the requirement that specific personal jurisdiction be assessed offering-by-offering by recasting its Complaint as alleging a single "underlying fraud" or "overall scheme." (Opp. at 61, 64.) In asserting claims based on five FIRREA predicates, Plaintiff explicitly attempts to allege each claim "[i]n connection with *each* Subject Deal," a phrase that the Complaint repeats nearly 30 times. (*See, e.g.*, Compl. ¶¶ 793-797, 804-808, 815-819, 822-824, 827-829.) Indeed, in the final paragraph of each section describing its "claims" in this case, Plaintiff alleges that Defendants are liable "[f]or *each* violation of [the predicate offense] as to *each* Subject Deal." (Compl. ¶¶ 802, 813, 820, 825, 830 (emphasis added).) The Complaint further alleges that different business groups, with different employees, were responsible for the different types of RMBS offerings on which Plaintiff bases its claims. (*See, e.g.*, Compl. ¶ 111 (alleging that the "Asset-Backed Securitization Desk" focused on subprime RMBS offerings, while the "Mortgage Backed Securities Group" focused on Alt-A RMBS offerings).) There are no allegations that these business groups acted together in an "overall scheme." Instead, the Complaint alleges hundreds of paragraphs of "deal-specific facts"—in separate sections devoted to each of the 40 separate RMBS offerings—that make distinct allegations about the unique due diligence results for each specific RMBS offering.[3] (Compl. ¶¶ 307-791.) Plaintiff relied heavily

---

[3]     Plaintiff appears to acknowledge that it must plead and prove its claims on an offering-by-offering basis: after spending four years investigating Defendants' entire RMBS business,

on these offering-specific due diligence results in seeking to survive Defendants' motion to dismiss. (*See* Order at 27 (considering allegedly "poor due diligence results for *each Subject Deal*" in assessing the sufficiency of Plaintiff's scienter allegations (emphasis added)).)

Thus, to prevail on any of its claims with respect to any of the 40 RMBS offerings at issue, Plaintiff must prove (among other things) offering-specific misrepresentations based on offering-specific evidence about the specific loans backing each separate RMBS offering. For example, if Defendants demonstrate at summary judgment that they did not make any misrepresentations in connection with the two Home Finance RMBS offerings, then Plaintiff's claims regarding those two offerings would fail, warranting UBS AG's dismissal from the case entirely. *See Williams* v. *Affinion Grp., LLC*, 889 F.3d 116, 125 (2d Cir. 2018) (material misrepresentation required for each separate violation of the mail and wire fraud statutes). In that scenario, the fact that Plaintiff chose to lump the two Home Finance RMBS offerings together with 38 other RMBS offerings in pleading every "cause of action" in its Complaint would be of no moment, because there no longer would be any claims against UBS AG.

\*   \*   \*

Defendants respectfully request that the Court dismiss Plaintiff's claims against UBS AG with respect to the 38 non-Home Finance RMBS offerings.

Respectfully,

Robert J. Giuffra, Jr.

cc:   All counsel of record (via ECF)

---

including many more RMBS offerings than just the 40 now at issue, Plaintiff chose to file a Complaint that challenges as fraudulent only a subset of those offerings that Defendants sold during the relevant period. (*See* Compl. ¶ 1 (Defendants sold "tens of billions of dollars of" RMBS and "[t]his action relates to 40 of those RMBS").) This presumably reflects Plaintiff's conclusion that it does not have viable claims as to any of the other RMBS offerings during the relevant period, and undermines the notion that Defendants' RMBS business was an enormous, unitary fraud scheme.