**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

June 9, 2021

Via ECF

The Honorable Rachel P. Kovner,
    United States District Judge,
        United States District Court, Eastern District of New York,
            225 Cadman Plaza East,
                Brooklyn, New York  11201.

Re:    *United States* v. *UBS Securities LLC*, No. 18-cv-6369 (E.D.N.Y.)

Dear Judge Kovner:

On behalf of Defendants, we respond to Plaintiff's request for a pre-motion conference on a proposed motion "regarding a defense asserted by the Defendants" other than UBS AG (whose answer is not yet due).  (ECF No. 129.)  Although styled as a proposed motion for "partial summary judgment" or "partial judgment on the pleadings," Plaintiff's application (for unspecified relief) seeks, in substance, an advisory opinion concerning the maximum size of a penalty that this Court *might* impose *after* a trial in this action.  The Court should not entertain Plaintiff's request for a premature ruling on a penalty issue that is not implicated by the defense that it cites.  That defense addresses only what conduct constitutes a *violation* that can give rise to liability under FIRREA.  Plaintiff advances no reason to proceed in this highly irregular fashion, before the close of fact or expert discovery.  Plaintiff's proposed motion is not contemplated by the Amended Scheduling Order, would not dispose of this case, and the Court need never decide the penalty issue unless a jury finds one or more Defendants liable after trial.

**Plaintiff's Proposed Motion Is Premature.**

Plaintiff's request ignores that the Amended Scheduling Order, which Plaintiff recently obtained, extends fact and expert discovery until August 26, 2021 and August 26, 2022, respectively, and sets September 9, 2022 as the "[d]ate to file [a] pre-motion conference request for any dispositive motion."  (ECF No. 121.)  In requesting these extensions, Plaintiff made no mention of its proposed motion, which Plaintiff now speculates "may significantly narrow the issues in dispute in advance of expert discovery and trial" without saying how.  (ECF No. 129 at 3.)

To the extent that Plaintiff seeks to file a motion for partial summary judgment, the Court should not hear that motion now because fact and expert discovery are ongoing.  Indeed, Defendants' discovery requests remain outstanding, and expert discovery is anticipated, on the very issue of whether Defendants' RMBS sales "affected" federally insured financial institutions ("FIFIs") as required for FIRREA liability.  12 U.S.C. 1833a(c)(2).  For example, Plaintiff recently stated in Rule 26(a)(1) supplemental initial disclosures that unidentified FDIC representatives may have discoverable information about whether certain RMBS purchasers were FIFIs.  (Ex. A at 1.) Plaintiff also declined to answer an interrogatory asking it to identify "each purchaser of certificates in the 40 RMBS that" Plaintiff "contend[s] was a FIFI at the time it purchased such

certificates," arguing that a response was "premature" and promising to "provide expert disclosures" on that subject. (Ex. B at 41-42.)

Defendants expect to submit one or more motions after the close of discovery that, unlike Plaintiff's proposed motion, may resolve this case in its entirety. It would be an inefficient use of judicial and party resources for the Court to hear Plaintiff's proposed motion now, in isolation and in advance of other summary judgment motions to be filed after discovery is complete. *See*, *e.g.*, *19 Recordings Ltd.* v. *Sony Music Ent.*, 2015 WL 10846136, at *4 (S.D.N.Y. Sept. 4, 2015) (declining to "consider any summary judgment motions . . . until the close of discovery" to "ensure that any such motions address all issues ripe for judgment in a consolidated manner" and "avoid wasting judicial and party resources").

To the extent that Plaintiff seeks to file a motion for partial judgment on the pleadings, such motions are not permitted in this District "because motions under Rule 12(c) must result in a 'judgment,' which is defined elsewhere in the Federal Rules as 'a decree and any order from which an appeal lies.'" *Meisels* v. *Meisels*, 2021 WL 1924186, at *7 (E.D.N.Y. May 13, 2021) (quoting Fed. R. Civ. P. 54(a)). Even if such a motion were permitted, it may be made only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). Here, the pleadings are not closed because the Court has not yet determined whether it has personal jurisdiction over UBS AG in connection with 38 of the 40 RMBS at issue. (*See* ECF No. 76 at 45 n.16; ECF Nos. 79-82, 101-103.) *See Healthcare Ass'n of New York State, Inc.* v. *Pataki*, 471 F.3d 87, 94 (2d Cir. 2006) ("[Defendant] has not filed an answer and the pleadings therefore are not closed.").

**Plaintiff's Proposed Motion Is Based on a Misreading of the Relevant Defense.**

In urging the Court to leapfrog discovery and trial and jump straight to a ruling on a hypothetical maximum penalty, Plaintiff misstates the defense on which it proposes to move. In its Complaint, Plaintiff alleges that Defendants made misrepresentations in offering materials for 40 RMBS that Defendants sold to hundreds of sophisticated institutional investors in 2006 and 2007. Plaintiff claims that Defendants' alleged misrepresentations constituted mail and wire fraud "affecting a federally insured financial institution" under 12 U.S.C. § 1833a(c) (the "Violations Provision"), which specifies the violations of predicate criminal statutes that give rise to liability under FIRREA. Plaintiff proposes to seek a ruling that a maximum penalty may be based on *all* losses to *all* investors (FIFI and non-FIFI alike) in the 40 RMBS at issue, which declined in value due to the historic housing market crash and financial crisis of 2007 and 2008. But that penalty issue is not implicated by any claim or defense before the Court.[1]

In support of its proposed motion, Plaintiff cites the Twenty-First Defense in the Answer filed by Defendants other than UBS AG, which states that "Plaintiff's claims are barred, in whole or in part, to the extent that Defendants' alleged violations of 18 U.S.C. §§ 1341 [mail fraud] and 1343 [wire fraud] did not affect a 'federally insured financial institution' within the meaning of FIRREA, including with respect to sales of certificates in the 40 RMBS to entities that were not 'federally insured financial institutions' within the meaning of FIRREA." (ECF No. 122

---

[1]    In any event, Plaintiff's cited cases have nothing to do with the maximum penalty theoretically available under FIRREA and do not support Plaintiff's theory. (*See* ECF No. 129 at 3.) All of those cases save one construe a provision concerning the statute of limitations for criminal mail and wire fraud, not FIRREA's civil penalties provision. The only case that Plaintiff cites that interprets FIRREA's civil penalties provision, *United States* v. *Bank of N.Y. Mellon*, 941 F. Supp. 2d 438 (S.D.N.Y. 2013), did not rule on any penalty issue but only on whether a FIFI could be liable under FIRREA for conduct that "affected" the FIFI itself.

Hon. Rachel P. Kovner                                                                                                          -3-

at 134.) Defendants pled this defense because only about 200 of the roughly 5,000 sales of certificates from the 40 RMBS were to FIFIs. Because the remaining 4,800 sales were to non-FIFIs, those sales cannot give rise to FIRREA liability predicated on mail or wire fraud "affecting a [FIFI]" under FIRREA's Violations Provision. Plaintiff mischaracterizes the Twenty-First Defense as implicating a *different* FIRREA provision, 12 U.S.C. § 1833a(b) (the "Maximum Penalty Provision"). That provision limits the "maximum amount of [a] penalty" the Court may impose, in its discretion, *only if and only after* Plaintiff establishes FIRREA liability under the Violations Provision. The Twenty-First Defense does not require the Court to interpret the Maximum Penalty Provision or to rule on a theoretical maximum penalty amount.[2]

Plaintiff's proposed motion would "put[] the proverbial cart before the horse" in asking the Court to decide how a hypothetical maximum penalty might be measured. *Lovely H.* v. *Eggleston*, 2012 WL 4459463, at *2 (S.D.N.Y. Sept. 19, 2012) (denying summary judgment on measure of damages before liability finding because ruling would "amount to an inappropriate advisory opinion"). The Court need not rule on the scope of the Maximum Penalty Provision unless and until (among other things) Plaintiff obtains a jury verdict that one or more Defendants is liable for mail or wire fraud "affecting a [FIFI]" under the Violations Provision. Only *after* such a verdict would the Court need to consider the Maximum Penalty Provision, which specifies three methods for calculating the amount that any penalty "shall not exceed": (i) a general statutory maximum of $1.1 million per violation; (ii) a "special rule for continuing violations" of the "lesser of" $1.1 million per day or $5.5 million; and (iii) a "special rule for violations creating gain or loss" in an amount based on losses resulting, or gains derived, from the violation. 12 U.S.C. § 1833a(b)(1)-(3) (as adjusted by 28 C.F.R. § 85.3(a)(6)-(7)). The Maximum Penalty Provision sets only an outer limit on the penalty, which is to be "assessed by the court," 12 U.S.C. § 1833a(a), and can be much lower than the maximum penalty. *See, e.g., United States* v. *Menendez*, 2013 WL 828926, at *9 (C.D. Cal. Mar. 6, 2013) (imposing $40,000 FIRREA penalty after government requested penalty of over $1 million).

Thus, only after a jury finding of FIRREA liability would the Court need to determine, among other things, whether to exercise its discretion to impose a penalty greater than $1,100,000 per violation and, if so, whether to set a loss- or gain-based penalty. In making that determination, the Court would not be required to set a penalty (1) equal to the maximum permitted by the statute, or (2) based on losses resulting from any violations. And if the Court were to find a loss-based penalty appropriate based on any mail or wire fraud violation "affecting a [FIFI]," the Court would then need to consider myriad other relevant issues, including (i) how to measure losses, (ii) whether non-FIFIs' losses should be considered, (iii) whether and to what extent any violations proven at trial "result[ed] in" such losses, 12 U.S.C. § 1833a(b)(3)(A), and (iv) which discretionary factors to consider and how they affect the penalty amount.

\*          \*          \*

For the foregoing reasons, the Court should deny Plaintiff's premature request.

---

[2]    Plaintiff relies on a UBS press release to advance its misinterpretation of the defense (*see* ECF No. 129 at 2 n.4), but it cannot move for judgment on a press release. Tellingly, Plaintiff's position—that FIRREA permits a penalty equal to all investor losses, including non-FIFI losses, on any securities offering if just one FIFI purchased in that offering—contradicts its statement in its own press release that "FIRREA authorizes the Department to seek civil penalties **up to the amount of the loss suffered by a financial institution** as a result of the violation." (Ex. C (emphasis added).)

Hon. Rachel P. Kovner -4-

                        Respectfully,

                        */s/ Robert J. Giuffra, Jr.*

                        Robert J. Giuffra, Jr.

(Attachments)

cc:     All counsel of record (via ECF)